**AIMEE ROBINSON**
**1150 SOUTH ROBINSON SCHOOL ROAD**
**FAIRMONT, NORTH CAROLINA  28340**
**TELEPHONE:  (425) 442-2000**
**EMAIL:  fivestarhospitality@hotmail.com**
**PLAINTIFF *PRO SE***

R E C E I V E D

MAY 1 6 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

----------------------------------------------X      Civil Action No. _____
                                             :
**AIMEE ROBINSON**                           :
*(individually),*                            :
                                             :
*Plaintiff,*                                 :
                                             :
*vs.*                                        :
                                             :
                                             :
**(1) MICHAEL PAULHUS**                      :           *Civil Action:*
*(individually and in his capacity as*       :
*an Ocean County Assistant*                  :      **COMPLAINT**
*Prosecutor);*                               :           **AND**
                                             :   **DEMAND FOR JURY TRIAL**
**(2) WILLIAM SCHARFENBERG,** :
*(individually and in his capacity as*       :
*an Ocean County Assistant*                  :
*Prosecutor);*                               :
                                             :
**(3) JOSEPH CORONADO**                      :
*(individually and in his capacity as*       :
*an Ocean County Prosecutor);*               :

1

**(4) THE OCEAN COUNTY**                                        :
**PROSECUTOR'S OFFICE** *(a*                                    :
*municipal entity of the State of*                             :
*New Jersey);*                                                  :
                                                                :
**(5) "PROSECUTOR DOES 1-20"**                                  :
*(fictitious names for any yet to be*                          :
*identified Assistant Ocean County*                            :
*Prosecutors who participated in the*                          :
*civil conspiracy to cause and / or*                           :
*that caused actionable damage*                                :
*to Plaintiff);*                                               :
                                                                :
**(6) "DETECTIVE ROES 1-20"**                                   :
*(fictitious names for any yet to be*                          :
*identified Ocean County*                                      :
*Prosecutor's Office Detectives who*                           :
*participated in the civil conspiracy*                         :
*to cause and / or that caused*                                :
*actionable damage to Plaintiff);*                             :
*and*                                                          :
                                                                :
**(7) "EMPLOYEE /AGENT**                                        :
**MOES 1-20"**                                                  :
*(fictitious names for any yet to be*                          :
*identified Employees and / or*                                :
*Agents of the Ocean County*                                   :
*Prosecutor's Office who*                                      :
*participated in the civil conspiracy*                         :
*to cause and / or that caused*                                :
*actionable damage to Plaintiff),*                             :
                                                                :
*Defendants.*                                                   :
-------------------------------------------X

Plaintiff **AIMEE ROBINSON**, by way of Complaint and Jury Demand against the Defendants named herein, says as follows:

## I.    JURISDICTION AND VENUE:

### A.    JURISDICTION:

1.    Jurisdiction for the United States District Court for the District of New Jersey, Trenton Vicinage, to entertain and adjudicate Plaintiff's Federal Claim(s) is generally vested pursuant to Article III, sec. 2 of the *United States Constitution* (1788), as amended, and specifically vested with such Court pursuant to 28 *U.S.C.* sec. 1331.

2.    Jurisdiction for the United States District Court for the District of New Jersey, Trenton Vicinage, to entertain and adjudicate Plaintiff's New Jersey State Law Claims, in light of Plaintiff's Federal Claims, is preliminarily vested pursuant to 28 *U.S.C.* sec. 1367 (the "Supplemental Jurisdiction Statute").  Alternatively and / or cumulatively to such preliminary basis of jurisdiction, the United States District Court for the District of New Jersey has a separate and independent basis of jurisdiction to entertain and adjudicate Plaintiff's New Jersey State Law Claims pursuant to 28 *U.S.C.* sec. 1332 (the "Diversity Jurisdiction Statute") as there is complete diversity of citizenship between the Plaintiff (a resident of the State of North Carolina) and all named Defendants (all Defendants are residents of the State of New Jersey and / or New Jersey State entities) and the amount in

3

controversy exceeds the sum of $75,000.00 United States Dollars exclusive of interest and costs of suit. Therefore, even if Plaintiff's Federal Claims are at some point dismissed this Court retains independent jurisdiction over the remaining New Jersey State Law Claims pursuant to 28 *U.S.C.* sec. 1332.

**B.    VENUE:**

**3.**    Venue is proper in the United States District Court for the District of New Jersey, Trenton Vicinage pursuant to 28 *U.S.C.* sec. 1291.

## II.    THE PARTIES:

**4.**    Plaintiff AIMEE ROBINSON, *individually,* (hereinafter "Plaintiff") is a citizen of the United States of America and a resident of the State of North Carolina. Plaintiff's residence is specifically located 1150 South Robinson School Road, Fairmont, North Carolina  28340.

**5.**    Defendant MICHAEL PAULHUS is sued both individually and in his capacity as an Ocean County Assistant Prosecutor. At all times relevant herein this Defendant was acting under color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983. At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983. At all times this Defendant acted intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights. This defendant is a resident of the State

of New Jersey, whose specific address is c/o 119 Hopper Avenue, in the town of Toms River, County of Ocean and State of New Jersey, with Postal Zip Code of 08753.

6.     Defendant WILLIAM SCHARFENBERG is sued both individually and in his capacity as an Ocean County Assistant Prosecutor.  At all times relevant herein this Defendant was acting under color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983.  At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983.  At all times this Defendant acted intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights.  This defendant is a resident of the State of New Jersey, whose specific address is c/o 119 Hopper Avenue, in the town of Toms River, County of Ocean and State of New Jersey, with Postal Zip Code of 08753.

7.     Defendant JOSEPH CORONADO is sued both individually and in his capacity as the Ocean County Prosecutor.  At all times relevant herein this Defendant was acting under color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983.  At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983.  At all times this Defendant acted

intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights.  This defendant is a resident of the State of New Jersey, whose specific address is c/o 119 Hopper Avenue, in the town of Toms River, County of Ocean and State of New Jersey, with Postal Zip Code of 08753.

**8.**      Defendant THE OCEAN COUNTY PROSECUTOR'S OFFICE is sued in its capacity as a municipal entity of the State of New Jersey.  At all times relevant herein this Defendant was acting under color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983.  At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983.  At all times this Defendant acted intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights.  At all times relevant herein this Defendant was acting under color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983.  At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983.  At all times this Defendant acted intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights.  This defendant is a resident of the State of New Jersey, whose specific address is c/o 119 Hopper Avenue, in the town of

Toms River, County of Ocean and State of New Jersey, with Postal Zip Code of 08753.

**9.** Defendant "PROSECUTOR DOES 1-20" (fictitious names for any yet to be identified Assistant Ocean County Prosecutors who participated in the civil conspiracy to cause and / or that caused actionable damage to Plaintiff) is / are sued both individually and in his / her capacity as an Ocean County Assistant Prosecutor. At all times relevant herein this Defendant was acting under color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983. At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983. At all times this Defendant acted intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights. This defendant is a resident of the State of New Jersey, whose specific address is c/o 119 Hopper Avenue, in the town of Toms River, County of Ocean and State of New Jersey, with Postal Zip Code of 08753.

**10.** Defendant "DETECTIVE ROES 1-20" (fictitious names for any yet to be identified Ocean County Prosecutor's Office Detectives who participated in the civil conspiracy to cause and / or that caused actionable damage to Plaintiff) is / are sued both individually and in his / her capacity as an Ocean County Prosecutor's Office Detective. At all times relevant herein this Defendant was acting under

7

color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983.  At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983.  At all times this Defendant acted intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights.

**11.**    Defendant "EMPLOYEE /AGENT MOES 1-20" (fictitious names for any yet to be identified Employees and / or Agents of the Ocean County Prosecutor's Office who participated in the civil conspiracy to cause and / or that caused actionable damage to Plaintiff) is / are sued both individually and in his / her capacity as an Employee and/ or Agent of the Ocean County Prosecutor's Office. At all times relevant herein this Defendant was acting under color of New Jersey State Law within the meaning of 42 *U.S.C.* sec. 1983.  At all times herein this Defendant was acting pursuant to a "policy, practice, custom or usage" of the Ocean County Prosecutor's Office within the meaning of 42 *U.S.C.* sec. 1983.  At all times this Defendant acted intentionally and / or maliciously and / or negligently and / or in deliberate indifference of Plaintiff's Federal Rights.  This defendant is a resident of the State of New Jersey, whose specific address is c/o 119 Hopper Avenue, in the town of Toms River, County of Ocean and State of New Jersey, with Postal Zip Code of 08753.

### III.   THE FACTS:

### A.   STATEMENT OF THE FACTS OF THE CASE:

**12.**    Plaintiff has long been engaged in the construction business and actively engages in such business through a sole member Limited Liability Company of the State of North Carolina (where Plaintiff is the "sole" Member) named "5 Star Hospitality & Construction, LLC".  Plaintiff and her company 5 Star Hospitality & Construction, LLC have experience in rehabilitating and remediating and refurbishing structures damaged by storm damage, and engage in business throughout the United States.  Plaintiff and her company 5 Star Hospitality & Construction, LLC are specifically registered and lawfully permitted to engage in the construction business in the States of North Carolina and Texas.  Plaintiff and her company are not registered to conduct business in the State of New Jersey and in fact at no time has Plaintiff, directly or indirectly, engaged in construction business in the State of New Jersey.

**13.**    During all times relevant herein Plaintiff and her company 5 Star Hospitality & Construction, LLC were engaged in performing and completing work for profit on four (4) separate written contracts for the renovation and rehabilitation of 4 separate hotels located in Texas which hotels were severely damaged by "Hurricane Harvy".

**13.** Several years ago through business / social circles in the construction trade, Plaintiff was introduced to Jamie Lawson (hereinafter "Lawson"), another contractor who had a somewhat similar business and who was single and also happened to live in and who was "based out of" the State of South Carolina. Lawson also was specifically engaged in the construction business with specialization of rehabilitating and remediating and refurbishing structures damaged by extreme storms and hurricanes throughout the United States.

**14.** Over time, because of their commonality of interest and otherwise, Plaintiff and Lawson became further involved and ultimately involved in a private intimate dating relationship. However, at all times Plaintiff and Lawson were essentially "boyfriend" and "girlfriend" to each other and as such, were not business partners and for personal and financial reasons kept their respective businesses and business relations strictly separate. They would, however, indeed, see each other socially as often as they could, doing so based upon their respective travel and work schedules.

**15.** In November 2012 "Super-Storm Sandy" struck the New Jersey coastline causing extensive damage, particularly along the Atlantic shore line in Ocean County, New Jersey. As Plaintiff was already busy with projects elsewhere in other states, she did not seek to expand her construction business into New Jersey despite the need for experienced contractors. However, Lawson in fact took his

considerable experience, registered with the State of New Jersey Division of Community Affairs as a "contractor" with the assistance of a lawyer, and came to New Jersey where and he and his construction business and construction crews engaged in the business of rehabilitating and remediating and refurbishing residential structures damaged by "Super-Storm Sandy".   Most of Lawson's construction work involved "lifting / raising" houses onto piers or pilings to comply with the new Base Flood Elevations ("BFE") fixed by the Federal Emergency Management Agency ("FEMA"), and then to rehabilitate and repair all storm damage done to such now raised residential structures by "Super-Storm Sandy"  In fact, Lawson satisfactorily completed in full almost all of the many projects he and him company were hired to perform.

**16.**    Apparently at some time during his work in New Jersey on "Super-Storm Sandy" projects, questions arose as to the propriety or legality of certain of Lawson's conduct as he had on several occasions entered into contracts with homeowners to repair homes for a fixed price, the homeowners used those contracts to obtain "grants" from various State and Federal Agencies to pay for the work, Lawson and his company would then do the actual for LESS than the face amount on the Contracts, returning the surplus amount  between what he charged and the amount of the grant TO THE HOMEOWNER, who then, rather than return the surplus money, simply KEPT the surplus money for themselves.   Otherwise

11

stated, the State and Federal Agencies approved the face price amount of each contract for the work listed to be done as fair and reasonable, Lawson did the work listed in full, but would charge less AND GIVE THE DIFFERENCE BACK TO THE HOMEOWNER WHO THEN KEPT THE SURPLUS MONEY.  Otherwise stated to be clear, Lawson did not himself keep any of the surplus money, it was given to the homeowner.

**17.**   When the "issue" of Lawson's business practices first arose in New Jersey, he and his civil business attorney met with representatives of the New Jersey Attorney General's Office.   The New Jersey Attorney General's Office, after reviewing the matter, took the position that there was no *criminal* conduct, at least on Lawson's part as the homeowners got and kept the "extra money", and it was the homeowner (not Lawson) who had signed Grants with the State and Federal Government which in the awarding paperwork required the homeowner (the person awarded the Grant) to return any surplus money.  And moreover, the Grant authorities had approved the higher prices as reasonable.  So at that point the New Jersey Attorney General's Office advised Lawson and his civil business attorney that they would not be taking any criminal or civil action regarding his contractual relations.  Armed with this knowledge, Lawson simply returned to and continued on with his construction business projects in New Jersey, but ceased the practice of changing prices on contracts and returning surplus money to customers.  And true

to the representations, at that time the New Jersey Attorney General's Office affirmatively decided to take no action (Criminal, Civil, Administrative or otherwise). Plaintiff knew nothing about any of this while it was occurring and was only informed about such facts much later.

**18.** At some point thereafter, a separate New Jersey State prosecuting agency, Defendant Ocean County Prosecutor's Office, somehow came to review Lawson's conduct. Despite the position of the New Jersey Attorney General's Office, Defendants Ocean County Prosecutor's Office, Joseph Coronado, Michael Paulhus, William Scharfenberg, Prosecutor Does 1-20, Detective Roes 1-20 and Employee / Agent Moes 1-20 decided to charge Lawson criminally. As such, after formal charges were issues in New Jersey, Lawson was thereafter arrested in North Carolina and extradited from North Carolina to New Jersey where he was initially lodged in the Ocean County Jail. Ultimately Lawson was denied bail pending indictment and trial, and Lawson was then indicted on several Second Degree and Third Degree criminal charges.

**19.** During such time and after Lawson was arrested in North Carolina, Plaintiff was made generally aware of Lawson's issues in New Jersey, but she could not really get involved directly with Lawson's problems in New Jersey as she was busy elsewhere with the day to day operations of her large and completely legitimate and taint free reputation construction. Lawson was a businessman and

an adult and had lawyers, and Lawson's problems were his to address and resolve.

Moreover, Lawson had legal counsel to assist him and Lawson's legal counsel

repeatedly assured Plaintiff that Lawson would ultimately be released shortly as he

had done nothing criminal.  Plaintiff remained loyal to Lawson, speaking to him

and his lawyers regularly.  Plaintiff could not understand what Lawson had done

that was "criminal", and Lawson's lawyers repeatedly reassured and advised here

that Lawson would be exonerated as he had done "nothing criminal".

**20.**   Suddenly, in early October 2017, Plaintiff was advised that Lawson had

inexplicably gone to Court and plead guilty to a First Degree Charge (when the

most serious charge Lawson had been indicted on was a less serious Second

Degree Charge) and had agreed to a 10 Year Criminal Sentence in New Jersey

State Prison.  Plaintiff was shocked and upset, as she had been lead to believe that

Lawson would be getting released – and that they would be resuming and / or

continuing their relationship – imminently.  But now Lawson was ostensibly going

to jail for 10 years for something lawyers told here was not even criminal, and

certainly not a First Degree Crime.

**21.**   Up until that time Plaintiff had pretty much stayed out of Lawson's business,

but now she wanted some explanation.  Lawson explained to her that all of his

assets in New Jersey had been frozen and he could not himself afford to defend the

case because of the cost of attorneys, and that the Ocean County Prosecutor had

insurmountable resources and that the Ocean County Prosecutor's Office had made prosecution of certain "Super-Storm Sandy" contractors a political matter (while protecting others who had actually committed serious crimes). Lawson said the inhumane conditions in the Ocean County Jail were "literally killing him", that he was denied bail, and that he felt that he had no choice but to plead guilty to anything to get out of the Ocean County Jail. While Lawson had plead guilty, he had not been formally sentenced yet.

22.   Outraged, Plaintiff herself with her own money hired another lawyer to take over Lawson's case specifically seek to vacate the outrageous plea and defend the case. Plaintiff paid $50,000.00 of her own hard earned money to hire the "new" lawyer and law firm.

23.   After Plaintiff and Lawson signed the retainer agreement with the new lawyer and Plaintiff paid the $50,000.00 for the motion to withdraw the plea and to actually defend the charges the new lawyer preliminarily contacted Defendant Michael Paulhus to advise that he would be filing a motion to withdraw the sentence. The new attorney and Defendant Michael Paulhus discussed the Lawson case in detail. Defendant Michael Paulhus and the other Defendants during this conversation were essentially advised that "*Lawson's girlfriend had money and had hired the new private lawyer to actually fight them and defend the charges*".

24.     Next in time, Plaintiff was contacted by the new lawyer and advised that Defendant Michael Paulhus had contacted him back with an alternate offer to withdrawing the plea, that being that rather than withdraw the plea that Lawson could "*buy down his parole ineligibility jail time*", and that Defendant Ocean County Prosecutor's Office, Defendant Joseph Coronaro, Defendant Michael Paulhus, William Scharfenberg and Prosecutor Does 1-20 would agree to a "deal" where they would agree to the Court reducing Lawson's parole ineligibility "… *by 6 months less for every $100,000.00 in restitution paid* …" by Plaintiff on Lawson's behalf.   Defendant Michael Paulhus put this offer in writing in text messages and otherwise, and this was approved by Defendant Joseph Coronado.

25.     Plaintiff initially questioned the legality of this "offer" as it frankly seemed unethical and somewhat like a "shakedown", reducing criminal charges for payments, which is exactly what was being offered.   Indeed, even if what Lawson had done was criminal, the difference between the contract prices and the amount of surplus monies returned to customers was well below $300,000.00, so while the Defendants were calling this money "restitution", it was indeed a substantial amount of profit for someone well more that any reasonable restitution that could be owed (which should have been paid back by the customers who actually got the surplus money anyway).   Plaintiff has much later and since learned that such an "arrangement" was in fact be illegal and a violation of the *New Jersey Rules of*

*Professional Conduct for Attorneys* as a Prosecutor using criminal threats to extract civil payments is simply not permitted.  Nevertheless, unaware of this for sure at that time, and trying to help Lawson, Plaintiff agreed to pay $300,000.00 toward "restitution" to get Lawson out of jail sooner.

26.    With the time Lawson had already served, coupled with the 18 months less of parole ineligibility Plaintiff would be "buying", Lawson would be eligible for parole and release from custody almost immediately upon sentencing.  This was a guarantee for Lawson's almost immediate freedom, rather than what could be months (or years) of legal fights, all while Lawson remained in the Ocean County Jail, and probably ultimately costing close to the $300,000.00 in legal fees anyway.

27.    In the spring of 2018, specifically on March 22, 2018, sent a letter to the new attorney confirming to him the source and origin of the funds being used to pay "restitution" were taken from her personal savings, which money was originally derived from income from her lawful construction business.  *See* **"Exhibit A".**

28.    Plaintiff then during the month of March 2018 ultimately wired the the total amount of $300,000.00 of her personal savings (almost all of her personal savings) to her and Lawson's Attorney's Trust Account in New Jersey for him to use to continue to negotiate for Lawson's freedom with Defendants.

**29.**   Defendants then requested additional information to ensure that the source of funds was legal and legitimate.   Plaintiff and Lawson's attorney advised that there might have to be a "source of funds hearing" before the trial judge, which is a standard process used when there is a question as to the validity of the origin of funds used to pay or post bail or restitution.   Plaintiff stated her willingness to fly to New Jersey to participate in direct and cross examination in open Court in such a "source of funds hearing", and further noted that all money was indeed verifiable as legitimate with the original source of income coming from from her company from her past and ongoing construction jobs.   Plaintiff also advised her and Lawson's attorney that she had 4 ongoing existing contracts in Texas and at least 6 more large contracts were "in the pipeline ready to sign" where she would make, among the 10 contracts, at least $2 Million profit during the completion of the 4 contracts and completion of the 6 new contracts.   Plaintiff sent additional documentation to her and Lawson's attorney confirming the above and specifically confirmed that she did not want Defendant's interfering in her business.

**30.**   Plaintiff and Lawson's attorney specifically advised the Defendants that a condition of providing the information is that Defendants were not to interfere with Plaintiffs business and customers in any way.

**31.**   Nevertheless, contrary to the verbal agreement with Plaintiff and Lawson's attorney, and with no legal or jurisdictional authority to do so, Defendants Michael

Paulhus, William Scharfenberg, Prosecutor Does 1-20, Detective Roes 1-20 and Employee / Agent Moes 1-20 actually then left the jurisdiction of Ocean County New Jersey, and traveled to Texas where they visited the 4 work sites of the ongoing contracts Plaintiff was completing.  Such Defendants spoke with workers and employees of Plaintiff, and contacted and spoke with the owners of the hotels, and advised such persons that they (Defendants) were there because "... *Plaintiff's boyfriend is a crook and in jail in New Jersey for contractor fraud and they were there because this work could be part of that fraud ...*".  Such Defendants also contacted the other 6 potential customers, saying various false and defamatory statements to third parties as will be more specifically revealed during discovery, at one time, instead of identifying themselves as representatives of a New Jersey Prosecutor's Office which has no business being in Texas, instead pretending to be "potential customers" of Plaintiff who were "warning" the hotel owners about "things about Plaintiff that they should know" and advising that they should not do business with Plaintiff.

32.     Within a day or so of the wrongful conduct just described, all 4 customers of the existing contracts threw Plaintiff off the job and terminated the existing contracts, and all 6 new contracts refused to sign, specifically citing to the "information" that they had received from Defendants.

33.   Plaintiff and her company suffered specific liquidated damages of at least $300,000.00 lost profit from the existing contracts and approximately $2 Million from the loss of the 6 contracts, all which was a proximate result of the wrongful actions of the Defendants.

34.   On July 6, 2018, Defendant Michael Paulhus was very publically fired from the Ocean County Prosecutor's Office for his unethical and illegal and probably criminal conduct in the Lawson Prosecution and for his unethical and tortious conduct in interfering with Plaintiff's business regarding the bogus "restitution" efforts.

35.   On July 7, 2018, Lawson appeared for sentencing and received a 10 year sentence in New Jersey State Prison with a 42 month judicially imposed parole ineligibility period.

36.   The new attorney never filed the motion to withdraw the guilty plea despite being paid $50,000.00 to do so.  That attorney was fired after sentencing.  New counsel was hired by Plaintiff for Lawson to appeal his conviction and to seek to vacate the plea.

## B.   PLAINTIFF'S COMPLIANCE WITH THE *NEW JERSEY TORT CLAIMS ACT* ("*Title 59*"):

37.   Plaintiff has fully and timely complied with all requirements as found in the *New Jersey Tort Claims Act* (hereinafter "*NJTCA*"), *N.J.S.A.* 59:1-1 to 59:12-3 on July 30, 2018 when Stephan T. Mashel, Esq., an attorney and licensed member of

the New Jersey Bar in good standing filed a timely and fully compliant "NOTICE OF TORT CLAIM" with Defendants. Thereafter, at the formal request of the Ocean County, New Jersey, Division of Risk Management, a supplement was timely filed on the "official form" adopted by the Public Entity by attorney Mashel.

**38.**   The provisions of the *NJTCA* do not apply to the Defendants as sued in their individual capacity.

**39.**   The provisions of the *NJTCA* do not apply to the Federal Claims as 42 *U.S.C.* sec. 1983 "pre-empts" and makes non-applicable the provisions of the *N.J.t.C.A.* to such Federal Claims

**40.**   As such, as a threshold matter to proceeding with all claims including the New Jersey State Law Claims against the Public entities, Plaintiff has complied with all pre-conditions to filing suit as required by the *NJTCA* and as such Plaintiff may now proceed with her Federal and New Jersey State Law Claims against all named Defendants here and now in this Court.

### C.   NON-APPLICABILITY OF "IMMUNITY DEFENSES" TO DEFENDANT'S CONDUCT:

**41.**   Defendants in an action for damages under 42 *U.S.C.* sec. 1983 may assert the Affirmative Defense of "Qualified Immunity", insulating them from liability, ***unless*** the law regarding the wrongful conduct committed by the Defendant "state actors" acting "under color of New Jersey State Law" which violated the rights of

Plaintiff as otherwise guaranteed and secured by the Federal Constitution and / or Federal Laws and moreover the unlawfulness of the conduct was already "clearly established" as a matter of law at the time of the unlawful conduct. "Clearly Established" means that at the time of the unlawful conduct the law was sufficiently clear such that every reasonable State Official would understand that whet he or she was doing was unlawful. In other words, existing law must have placed the illegality of the officer(s) conduct beyond debate. *See Reichle v. Howards,* 566 *U.S.* 658 (2012); *Ashcroft v. al-Kida,* 563 *U.S.* 731 (2011). In the present matter, the law was "Clearly Established" and as such the Defendants named herein are barred from asserting the affirmative defense of "Qualified Immunity".

**42.** The Defendants are barred from asserting the Affirmative Defense of "Good Faith Immunity" under Title 59 of New Jersey Statutes as relates to the New Jersey State Law Claims asserted herein.

## IV.   CAUSES OF ACTION:

### A.   FEDERAL CLAIMS:

#### FIRST COUNT:
#### (42 *U.S.C.* sec. 1983)

**43.** Congress has provided citizens with a specific Federal Cause of Action, now codified at 42 *U.S.C.* sec. 1983, when any "person" acting "under color of state

law" violates the rights of such citizen as otherwise guaranteed and secured by the Federal Statutory Law or by the Federal Constitution.

**44.**     In the present matter as outlined herein, the Defendants, acting alone, and / or together, and / or pursuant to a conspiracy, and / or pursuant to a municipal pattern, practice, custom or usage, knowingly violated Plaintiff's rights as guaranteed and secured by the United States Constitution, specifically by knowingly violating a recognized and clearly established "property interest" and "liberty interest" without due process of law within the meaning of the Fourteenth Amendment to the United States Constitution, and cumulatively and / or alternatively by violating a recognized and clearly established right to be free from unreasonable searches and intrusion into private matters within the meaning of the Fourth Amendment to the United States Constitution made applicable to the State Actors of the State of New Jersey by virtue of the Fourteenth Amendment.

**45.**     The Actions of the Defendants as aforesaid were knowing, intelligent, intentional and / or with deliberate indifference to Plaintiff's "Clearly Established" Federal rights, and proximately resulted in damage to the Plaintiff.

**B.**     **NEW JERSEY STATE LAW CLAIMS:**

### SECOND COUNT:
**(Tortious Interference With Contractual Relations –**
*See generally Nostrame v. Santiago,* **213 N.J. 109**
**(2013))**

**46.**     Plaintiff hereby repeats and re-alleges all prior factual allegations of this

Complaint and Jury Demand as if set forth fully herein.

**47.**     In the present case the Defendants wrongfully and without legal excuse or

privilege wrongfully and illegally interfered with Plaintiff's existing contracts and

with at least six (6) contracts that were being consummated, causing all contracts

to be cancelled and proximately resulting in economic damage to Plaintiff.

### THIRD COUNT:
**(Tortious Interference With Prospective Economic**
**Advantage –** *See generally Printing Mart-Morristown*
*v. Sharp Electric Corporation,* **116 N.J. 739 (1989))**

**48.**     Plaintiff hereby repeats and re-alleges all prior factual allegations of this

Complaint and Jury Demand as if set forth fully herein.

**49.**     In the present case, (1) Plaintiff had the reasonable interest and expectation

of economic advantage; (2) the Defendants intentionally interfered with that

interest; (3) such foreseeable financial harm was in fact inflicted without legal

excuse or privilege; and (4) the wrongful interference proximately caused

Plaintiff's loss of that interest.

## FOURTH COUNT
### (Defamation – *See generally Ward v. Zelikofsky,* 136 *N.J.* 516 (1994))

**50.**    Plaintiff hereby repeats and re-alleges all prior factual allegations of this Complaint and Jury Demand as if set forth fully herein.

**51.**    The Defendants made many and diverse false and defamatory statements of fact or or concerning the Plaintiff and the Plaintiff's business.

**52.**    The false and defamatory statements were communicated to third parties.

**53.**    The false and defamatory statements were not legally privileged.

**54.**    The Defendants at all times acted negligently and / or with malice.

**55.**    As the statements related to Plaintiff's business and profession, such false and defamatory statements are "defamatory *per se*" and damage to Plaintiff's good name and reputation is presumed under the law.

**56.**    Plaintiff has been proximately damaged by the wrongful conduct of the Defendants as described herein.

## FIFTH COUNT:
### (Invasion of Right to Privacy - *See generally Bisbee v. John C. Conover Agency, Inc.,* 186 *N.J.Super.* 335 (App. Div. 1982))

**57.**    Plaintiff hereby repeats and re-alleges all prior factual allegations of this Complaint and Jury Demand as if set forth fully herein.

**58.**    The New Jersey Tort of "Invasion of Privacy" is described and defined as the intentional intrusion, physically or otherwise, upon the solitude and seclusion

of another or his or her private affairs or concerns under circumstances that would be highly offensive to a reasonable person.

59.    In the present matter, as described herein, the Defendants named herein have wrongfully and with no legal excuse invaded and committed actionable violations of Plaintiff's right to privacy which has proximately resulted in damage to Plaintiff.

### SIXTH COUNT:
**(Intentional Infliction of Emotional Distress – *See generally* Buckley v. Trenton Savings Fund Society, 111 N.J. 355 (1988))**

60.    Plaintiff hereby repeats and re-alleges all prior factual allegations of this Complaint and Jury Demand as if set forth fully herein.

61.    The actions of the Defendants as outlined herein were, in context, outrageous and unwarranted and intentional and proximately resulted in foreseeable emotional distress and damage to the Plaintiff who has been damaged thereby.

### SEVENTH COUNT:
**(False Light – *See Romaine v. Kallinger*, 109 *N.J.* 282 (1988))**

62.    Plaintiff hereby repeats and re-alleges all prior factual allegations of this Complaint and Jury Demand as if set forth fully herein.

63.    The New Jersey Tort of "False Light" is when one gives publicity to a matter concerning another that places the other before the public in a false light.

One is liable for this Tort if statements were made about the Plaintiff that were false and / or had the capacity to give rise to a false impression of the Plaintiff.  In other words, a false light claim requires that the offending party make a major misrepresentation of the plaintiff's character, history, activities or beliefs.

**64.**    The Defendants, individually and / or in combination and / or as part of and in furtherance of a conspiracy, committed many and diverse acts that were actionable and wrongful and which constituted violations of the New Jersey Tort of "False Light", and Plaintiff has been proximately damaged thereby.

### EIGHTH COUNT:
### (Civil Conspiracy – *Banco Popular of North America v. Gandi,* 184 *N.J.* 161 (2005))

**65.**    Plaintiff hereby repeats and re-alleges all prior factual allegations of this Complaint and Jury Demand as if set forth fully herein.

**66.**    Under New Jersey State Law, an actionable Civil Tort Conspiracy is made out when it is alleged and proven that a combination of two or more persons acted in concert to commit an unlawful act, and commit an unlawful act by unlawful means, with the design and intention to inflict, intended effect, or unintended effect resulting in foreseeable, injury upon another person or entity.

**67.**    In the present matter,   the Defendants in combination and / or as part of and in furtherance of a conspiracy, committed many and diverse acts that were

actionable and wrongful and which constituted violations of the New Jersey Tort Laws and Plaintiff has been proximately damaged thereby.

## V.    REQUEST FOR RELIEF:

**WHEREFORE,** Plaintiff hereby demands judgment against each named Defendant individually, jointly, severally, or in the alternative as follows:

**A.)**    Judgment awarding Plaintiff actual liquidated compensatory damages in the amount of $302,000.00 (three hundred two thousand United States Dollars);

**B.)**    Judgment awarding Plaintiff such additional compensatory damages under 42 *U.S.C.* sec. 1983 and / or under New Jersey State Law as determined by a Jury as necessary and appropriate to make Plaintiff whole for the economic and non-economic damage caused to Plaintiff's health, name, reputation, and business;

**C.)**    Judgment awarding punitive damages under New Jersey State Law in an amount as determined by a Jury necessary to punish Defendants for their malicious and intentional and unlawful conduct and to deter others in the future from engaging in similar malicious and intentional and unlawful conduct;

**D.)**    Judgment awarding punitive damages under 42 *U.S.C.* sec. 1983 in an amount as determined by a Jury necessary to punish Defendants for their conduct in being deliberate indifference to Plaintiff's clearly established Federal Rights and to deter others in the future from engaging in similar malicious and intentional and unlawful conduct;

**E.)**   Judgment Declaring that Defendants violated Plaintiff's Federal Rights and awarding nominal damages in the amount of $1.00 pursuant to the authority of 42 U.S.C. sec. 1988.

**F.**   Judgment awarding attorneys' fees pursuant to 42 *U.S.C.* sec. 1983.

**G.**   Judgment awarding interest and costs of suit pursuant to New Jersey State Law, the *Federal Rules of Civil Procedure.*

**H.**   Judgment awarding such further relief as the Court deems fair, just and equitable.

**DATED:**  5|15|19

**AIMEE ROBINSON**
**PLAINTIFF *PRO SE***

## VI.   <u>**DEMAND FOR JURY TRIAL:**</u>

In accordance with the *Federal Rules of Civil Procedure* Plaintiff hereby demands a jury trial on all contested material questions of fact.

**DATED:**  5|15|19

**AIMEE ROBINSON**
**PLAINTIFF *PRO SE***

## VII.   *Rule* 11 AND *PRO SE* ADDRESS CERTIFICATION:

Under *F.R.Civ.P.* 11, by signing below, I certify to the best of my knowledge, information and belief that this Complaint:  (1) Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or revising existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of *F.R.Civ.P.* 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office with may result in dismissal of my case.

DATED:  5/15/19

_____
AIMEE ROBINSON
PLAINTIFF *PRO SE*