<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AIMEE ROBINSON,

               Plaintiff,

               v.

MICHAEL PAULHUS, et al.,

               Defendants.

Civil Action No. 19-12572 (MAS) (TJB)

**MEMORANDUM OPINION**

<u>SHIPP, District Judge</u>

        This matter comes before the Court upon Defendants Michael Paulhus ("Paulhus"), William Scharfenberg ("Scharfenberg"), Joseph Coronato[1] ("Coronato"), and the Ocean County Prosecutor's Office's (the "OCPO") (collectively, "Defendants") Motions[2] to Dismiss pro se Plaintiff Aimee Robinson's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] (ECF Nos. 17, 18.) Plaintiff filed a Cross-Motion that included opposition to Defendants' Motions (ECF No. 22), and Defendants replied (ECF Nos. 23, 24). The Court has carefully considered the parties' submissions and decides the matter without oral argument

---

[1] Incorrectly pled as "Joseph Coronado."

[2] Defendants Scharfenberg, Coronato, and the OCPO filed their Motion on July 1, 2020. (ECF No. 17.) That same day, Defendant Paulhus filed his Motion (ECF No. 18), incorporating all arguments advanced by the other Defendants, (Paulhus's July 1, 2020 Correspondence, ECF No. 18-1.) The Court, therefore, will consider the arguments and brief of Scharfenberg, Coronato, and the OCPO on behalf of all Defendants.

[3] Any references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motions to Dismiss

are granted in part and denied in part.

## I.  BACKGROUND[4]

Plaintiff, appearing pro se, is a North Carolina resident who works in the construction

industry. (Compl. ¶¶ 4, 12, ECF No. 1.) Plaintiff's company "5 Star Hospitality & Construction,

LLC" has "experience in rehabilitating[,] . . . remediating[,] and refurbishing structures damaged

by storm damage, and engage[s] in business throughout the United States[,]" primarily in North

Carolina and Texas. (*Id.* ¶ 12.) Several years ago, Plaintiff met Jamie Lawson ("Lawson"),

"another contractor who had a somewhat similar business" and lived in South Carolina. (*Id.* ¶ 13.[5])

Over time, Plaintiff and Lawson became "involved in a private intimate dating relationship" in

which they "were essentially 'boyfriend' and 'girlfriend' to each other[.]" (*Id.* ¶ 14.) The two,

however, "were not business partners and for personal and financial reasons kept their respective

businesses and business relations separate." (*Id.*)

Plaintiff asserts that, following Super Storm Sandy in 2012, Lawson registered as a

contractor in New Jersey and began performing construction work in the State. (*Id.* ¶ 15.)

"[Q]uestions[, however,] arose as to the propriety or legality of . . . Lawson's conduct[.]"[6] (*Id.*

---

[4] For the purposes of the instant motion, the Court accepts as true and summarizes the factual allegations of the Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[5] The Complaint lists two paragraph "thirteens." (*See* Compl. 9–10.) The instant citation refers to the paragraph found on page 10 of the Complaint.

[6] Though not integral to the instant motion, the Court will briefly summarize the alleged accusations against Lawson. According to Plaintiff, Lawson would enter "into contracts with homeowners to repair homes for a fixed price[.]" (Compl. ¶ 16.) The homeowners would then use the "contracts to obtain 'grants' from various [s]tate and [f]ederal [a]gencies to pay for the work[.]" (*Id.*) "Lawson and his company would then do the actual [work] for [less] than the face amount on the [c]ontracts, returning the surplus amount between what he charged and the amount of the grant [to the homeowner], who then, rather than return the surplus money, simply [kept it] . . . for themselves." (*Id.*)

¶ 16.) According to Plaintiff, the OCPO decided to investigate Lawson's conduct and subsequently charged him criminally.[7] (*Id.* ¶ 18.) Initially, Plaintiff believed Lawson had been "indicted on several [s]econd [d]egree and [t]hird [d]egree criminal charges[,]" and that he "would be exonerated as he had done nothing criminal." (*Id.* ¶¶ 18–19 (internal quotation marks omitted).) In October 2017, however, "Plaintiff was advised that Lawson had inexplicably gone to [c]ourt and [pled] guilty to a [f]irst [d]egree [c]harge . . . and had agreed to a [ten-year c]riminal [s]entence in New Jersey [s]tate [p]rison." (*Id.* ¶ 20.)

Concerned for Lawson, Plaintiff asserts she paid $50,000 and "hired another lawyer to take over Lawson's case[,] . . . vacate the outrageous plea[,] and defend the case." (*Id.* ¶¶ 21–22.) According to Plaintiff, the new lawyer and Paulhus discussed Lawson's case and came to an agreement in which Lawson could "buy down his parole ineligibility jail time" by paying restitution.[8] (*Id.* ¶¶ 23–24 (alleging Defendants agreed to "[six] months less for every $100,000.00 in restitution paid").) Although skeptical that the offer was ethical, Plaintiff wired $300,000 from her personal savings to the new lawyer "for him to use to continue to negotiate for Lawson's freedom with Defendants." (*Id.* ¶¶ 25–28.)

According to Plaintiff, "Defendants then requested additional information to ensure that the source of [the] funds was legal and legitimate." (*Id.* ¶ 29.) "Plaintiff stated her willingness to fly to New Jersey to participate in . . . a source of funds hearing, and further noted that all money was indeed verifiable as legitimate with the original source of income coming from . . . her company from her past and ongoing construction jobs." (*Id.* (internal quotation marks omitted).) "Plaintiff sent additional documentation to her and Lawson's attorney confirming the above and

---

[7] Plaintiff does not specify the nature of these charges.

[8] Plaintiff asserts that Defendants Paulhus, Scharfenberg, Coronato, and the OCPO all agreed to this offer, and that Coronato had final approval. (Compl. ¶ 24.)

specifically confirmed that she did not want [Defendants] interfering in her business." (*Id.*; *see also id.* ¶ 30 ("Plaintiff . . . specifically advised . . . Defendants that a condition of providing the information is that Defendants were not to interfere with Plaintiff[']s business and customers in any way.").)

Despite her requests, Plaintiff asserts Paulhus and Scharfenberg, along with unknown individuals, "traveled to Texas where they visited the [four] work sites of the ongoing contracts Plaintiff was completing." (*Id.* ¶ 31.) According to Plaintiff, Paulhus and Scharfenberg spoke with Plaintiff's employees and local hotel owners, "and advised such persons that they . . . were there because '[]Plaintiff's boyfriend is a crook and in jail in New Jersey for contractor fraud and . . . this work could be part of that fraud[.]" (*Id.*) Paulhus and Scharfenberg also allegedly contacted six potential customers and said "various false and defamatory statements[.]" (*Id.*) Furthermore, Plaintiff alleges that, "instead of identifying themselves as representatives of [the OCPO,] . . . [Paulhus and Scharfenberg] instead pretend[ed] to be 'potential customers' of Plaintiff who were 'warning' the [potential customers] about 'things . . . they should know' and advising that they should not do business with Plaintiff." (*Id.*)

According to Plaintiff, "[w]ithin a day or so of the wrongful conduct [by Paulhus and Scharfenberg], all [four] customers of the existing contracts threw Plaintiff off the job and terminated the existing contracts[.]" (*Id.* ¶ 32.) Furthermore, "all [six potential] new [customers] refused to sign [their proposed contracts], specifically citing to the 'information' that they had received from Defendants." (*Id.*) Plaintiff maintains she and her company "suffered specific liquidated damages of at least $300,000.00 [in] lost profit from the existing contracts[,] and approximately $2 [m]illion from the loss of the [six] contracts[.]" (*Id.* ¶ 33.)

On May 16, 2019, Plaintiff filed the instant action against Defendants asserting: (1) violation of 42 U.S.C. § 1983 ("Section 1983"), (*id.* ¶¶ 43–45); (2) tortious interference with

contractual relations, (*id.* ¶¶ 46–47); (3) tortious interference with prospective economic advantage, (*id.* ¶¶ 48–49); (4) defamation, (*id.* ¶¶ 50–56); (5) invasion of the right to privacy, (*id.* ¶¶ 57–59); (6) intentional infliction of emotional distress ("IIED"), (*id.* ¶¶ 60–61); (7) false light, (*id.* ¶¶ 62–64); and (8) civil conspiracy, (*id.* ¶¶ 65–67) (Counts Two through Eight collectively, the "State Law Claims"). Defendants now move to dismiss Plaintiff's Complaint for failure to state a claim. (ECF Nos. 17, 18.)

II.   **LEGAL STANDARD**

When analyzing a Rule 12(b)(6) motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [she] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   DISCUSSION

### A.   Defendant Coronato

As a preliminary matter, the Court addresses Plaintiff's claims against Coronato. Defendants argue that "Plaintiff has not provided sufficient facts regarding . . . Coronato's alleged participation in the putative violations of Plaintiff's civil rights (nor has she done so for her tort-based claims either)." (Defs.' Moving Br. 12, ECF No. 17-1.) According to Defendants, "[o]ther than stating that . . . Coronato approved a proposed plea offer to Plaintiff's *boyfriend*[,] . . . the Complaint only asserts conclusory statements of liability against [him.]" (*Id.* (emphasis in original).) The Court agrees. Plaintiff does not allege that Coronato traveled to Texas to speak with Plaintiff's current and prospective customers. (*See* Compl. ¶ 31.) Rather, Plaintiff merely alleges that Defendants, including Coronato, acted "together," "pursuant to a conspiracy," or "pursuant to a municipal pattern" when injuring Plaintiff. (*Id.* ¶ 44; *see also id.* ¶¶ 64, 67.)

Plaintiff, therefore, fails to provide any factual allegations of specific conduct performed by Coronato that relate to her alleged injuries. When analyzing a Rule 12(b)(6) motion, courts may ignore legal conclusions or factually unsupported accusations that merely state "the defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678. Accordingly, the Court finds that Plaintiff fails to

plausibly allege a Section 1983 or state law tort claim against Coronato. The Court, therefore, dismisses all counts against Coronato without prejudice.

**B.     Section 1983**

Plaintiff's Section 1983 claim asserts violations of the Fourth and Fourteenth Amendments. (Compl. ¶¶ 43–45.) Plaintiff appears to allege that Defendants' defamatory statements and interference with her construction company in Texas "violat[ed] a recognized and clearly established 'property interest' and 'liberty interest' without due process of law within the meaning of the Fourteenth Amendment[.]" (*Id.* ¶ 44.) Alternatively, Plaintiff alleges these actions violated her "recognized and clearly established right to be free from unreasonable searches and intrusion into private matters within the meaning of the Fourth Amendment[.]" (*Id.*) "To prevail on a [Section] 1983 claim, [the plaintiff must] show, first, that she was deprived of a constitutional right and, second, that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F. 3d 606, 609 (3d Cir. 2011) (internal quotation marks and citation omitted).

**1.     Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The core of due process is the protection against arbitrary governmental action and has procedural and substantive components." *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000) (citation omitted). To state a claim for procedural due process violations under Section 1983, "a plaintiff must allege that (1) [she] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citation omitted). On the other hand, "[t]o prevail

on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived [her] of a protected property interest." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292 (3d Cir. 1999). "It is well-settled that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Kalick v. United States*, 35 F. Supp. 3d 639, 646 (D.N.J. 2014) (internal quotation marks and citation omitted).

Here, Plaintiff does not specify the exact property and liberty interests Defendants allegedly violated. (Compl. ¶ 44.) The Court assumes, based on the factual allegations of the Complaint, that Plaintiff asserts reputational and economic harm caused by Defendants' allegedly defamatory statements. (*See generally id.*) Such harm, however, is not a property or liberty interest protected by the Due Process Clause. The Third Circuit's decision in *Boyanowski* is instructive. There, a transportation contractor brought a Section 1983 action against his former government employer asserting violations of his due process rights. *Boyanowski*, 215 F.3d at 399. The contractor alleged that the employer's defamatory statements to potential bidders, including calling him a "crook," prevented him from obtaining transportation contracts. *Id.* In reversing a judgment entered in favor of the contractor upon a jury verdict, the Third Circuit held that "[t]he Supreme Court has made clear that federal courts are not to view defamatory acts as constitutional violations." *Id.* at 401; *see also Siegert v. Gilley*, 500 U.S. 226, 234 (1991) ("Most defamation plaintiffs attempt to show some sort of special damage . . . which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but . . . not . . . in a *Bivens* action."); *Paul v. Davis*, 424 U.S. 693, 710–12 (1976) (holding that harm to reputation "does not result in a deprivation of any 'liberty' or 'property'" interest under procedural due process). Ultimately, the Third Circuit held that applying the Due Process Clause to the interests Plaintiff now seeks to protect "would subsume broad categories of tort law under the constitutional [protection]."

*Boyanowski*, 215 F.3d at 404. According to the court, "[e]quating a defamatory statement that leads to a third party's not extending a contract to a frustrated plaintiff with the deprivation of the plaintiff's legal right to engage in the common occupations of life in a manner protected by the Fourteenth Amendment goes too far." *Id.*

Accordingly, the Court finds that Plaintiff has failed to plausibly allege a violation of the Fourteenth Amendment under Section 1983.

### 2. Fourth Amendment

The Fourth Amendment recognizes "[t]he right of the people to be secure *in their persons, houses, papers, and effects*, against unreasonable searches and seizures," and provides that "no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV (emphasis added). While a violation of the Fourth Amendment may form the basis of a Section 1983 claim, *see, e.g., Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010), Plaintiff fails to allege *any* search by Defendants of her person, home, papers, or effects. The Court, therefore, finds that Plaintiff has failed to allege a Fourth Amendment violation under Section 1983 against Defendants. Having found that Plaintiff also failed to plausibly allege a violation of her due process rights under Section 1983, the Court, accordingly, dismisses Count One against all Defendants without prejudice.

### C. State Law Claims

Plaintiff asserts several state law tort claims against Defendants: tortious interference with contractual relations, tortious interference with prospective economic advantage, defamation, invasion of the right to privacy, IIED, false light, and civil conspiracy. (*See generally* Compl. ¶¶ 46–67.) Defendants, however, argue that the State Law Claims are barred under several provisions of the New Jersey Tort Claims Act ("NJ TCA").

First, Defendants note the NJ TCA "provides that '[a] public employee is not liable for injury caused by his instituting any judicial or administrative proceeding within the scope of his

employment.'" (Defs.' Moving Br. 21 (citing N.J. Stat. Ann. § 59:3-8).) Defendants, therefore,

argue that because the alleged misconduct was performed "in connection with Lawson's criminal

proceedings and plea negotiations, as well as in connection with the 'source of funds hearing[,]'"

they are not liable under the NJ TCA. (*Id.*) Second, Defendants assert that Plaintiff's

misrepresentation claims relating to comments Defendants made about Plaintiff to her customers

are barred under the NJ TCA. (*Id.* at 25–26 (citing N.J. Stat. Ann. § 59:3-10 ("A public employee

acting in the scope of his employment is not liable for an injury caused by his

misrepresentation.")).) Finally, Defendants argue that the NJ TCA provides public officials with

qualified immunity. (*Id.* at 26 (citing N.J. Stat. Ann. § 59:3-3 ("A public employee is not liable if

he acts in good faith in the execution or enforcement of any law.")).)

The immunity provisions Defendants now cite, however, are "subject to the exception

contained in [N.J. Stat. Ann. §] 59:3-14, which provides that '[n]othing in this act shall exonerate

a public employee from liability if it is established that his conduct was outside the scope of his

employment or constituted a crime, actual fraud, actual malice[,] or willful misconduct.'" *R.K. v.*

*Y.A.L.E. Schs., Inc.*, 621 F. Supp. 2d 188, 199 (D.N.J. 2008) (quoting N.J. Stat. Ann. § 59:3-14).

Here, Plaintiff has alleged that Paulhus and Scharfenberg acted wrongfully, intentionally, and

maliciously in "saying various false and defamatory statements" and while "pretending to be

'potential customers'" in Texas. (Compl. ¶ 31; *see generally id.* ¶¶ 46–67.) Paulhus and

Scharfenberg's allegedly defamatory statements included those to Plaintiff's employees and

customers that they were in Texas "because [Plaintiff's construction] work could be part of

[Lawson's] fraud." (*Id.* ¶ 31.) Even assuming the foregoing statements were made within the scope

of their employment and are protected under the NJ TCA, the Court cannot find the same for their

comments to the six potential customers. There, Plaintiff alleges Paulhus and Scharfenberg

pretended to be potential customers of Plaintiff and "advis[ed others] that they should not do business with [her]." (*Id.*)

Accepting all factual allegations as true and construing the Complaint "in the light most favorable" to Plaintiff, *Phillips*, 515 F.3d at 233, the Court denies Defendants' Motions to Dismiss Counts Two through Eight against Paulhus and Scharfenberg.[9] *See R.K.*, 621 F. Supp. 2d at 199–200 (denying motion to dismiss of intentional tort claims despite identical assertions of NJ TCA immunity because the plaintiffs "alleged that [the d]efendants acted maliciously in fabricating a fictitious account" of sexual abuse). The Court finds, however, that the OCPO is immune from suit under the NJ TCA. *See* N.J. Stat. Ann. § 59:2-10 ("A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."); *R.K.*, 621 F. Supp. 2d at 200 (dismissing defamation, false light, IIED, and civil conspiracy claims against public board of education because the claims asserted were "all premised upon the individual [d]efendants' malicious conduct"). Accordingly, the Court dismisses Counts Two through Eight against the OCPO without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[9] Defendants also argue that Plaintiff's defamation and false light claims are barred by the statute of limitations. (Defs.' Moving Br. 23.) Although Defendants concede that the "Complaint is unspecific as to the timing of . . . Defendants' alleged defamatory communications[,]" they nonetheless assert that the communications "may have occurred around March 2018, which would mean that the [one-year] statute of limitations expired . . . prior to the filing of the Complaint on May 16, 2019." (*Id.* at 23–24.) The Court, however, will not dismiss these claims at this stage of the litigation based solely on Defendants' assumptions.